THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH

| | |
|---|---|
| STEVEN G. MAXFIELD; MORRIS MAXFIELD; and DANIEL NEWBY,<br><br>Plaintiffs,<br><br>v.<br><br>DEIDRE M. HENDERSON,[1] in her official capacity as Lieutenant Governor of Utah,<br><br>Defendant. | **MEMORANDUM DECISION AND ORDER DENYING MOTION FOR ATTORNEYS' FEES**<br><br>Case No. 4:19-cv-00106-DN<br><br>District Judge David Nuffer<br>Magistrate Judge Paul Kohler |

Plaintiffs Steven G. Maxfield, Morris Maxfield, and Daniel Newby ("Plaintiffs") sued Defendant Deidre M. Henderson in her official capacity as Lieutenant Governor of Utah (the "Lt. Governor")[2] for rejecting Plaintiffs' referendum application based on an allegedly unconstitutional voting requirement for sponsors in Utah's Referendum Statute. After Plaintiffs filed this action and before the Tenth Circuit heard oral argument for an interlocutory appeal filed by the Lt. Governor, the Referendum Statute was amended, and the parties settled. Plaintiffs' action was dismissed by the Tenth Circuit without prejudice to Plaintiffs' filing a motion for attorneys' fees. Plaintiffs timely filed their Motion for Attorneys' Fees and Costs

---

[1] Plaintiffs designated Spencer Cox, in his official capacity as Lt. Governor of Utah, as the defendant in this action. Since then, Deidre Henderson has become the new Lt. Governor of Utah. Fed. R. Civ. P. 25(d) provides that when "a public officer who is a party in an official capacity . . . ceases to hold office . . . the officer's successor is automatically substituted as a party. Later proceedings should be in the substituted party's name. . . ."

[2] The Lt. Governor makes the argument that only her personal actions may be reviewed for bad faith. Opposition at 6. However, this action is not against Ms. Henderson in her personal capacity, but in her official capacity, so this action is, "for all practical purposes, brought against the State." *Hutto v. Finney*, 437 U.S. 678, 699 (1978). That said, the Lt. Governor is not responsible for all the actions of the State of Utah, in its various branches, but only for those taken by her in her official capacity.

("Motion").[3] The Lt. Governor filed an opposition ("Opposition"),[4] and Plaintiffs filed a reply ("Reply").[5] After careful consideration of the pleadings, the parties' memoranda, and the relevant legal authority, Plaintiffs' Motion is DENIED.

**Table of Contents**

Background ........................................................................................................................... 2
Discussion ............................................................................................................................. 5
    Plaintiffs fail to allege any actions by the Lt. Governor that constitute bad faith during the course of litigation. ............................................................................................ 8
    Plaintiffs fail to show that the Lt. Governor asserted colorless defenses or otherwise acted in bad faith in this action. ....................................................................................... 9
Conclusion ........................................................................................................................... 13
Order .................................................................................................................................... 14

## BACKGROUND

Utah's Constitution grants "[t]he legal voters of the State of Utah" the right to "initiate any desired legislation" or submit any law passed by the Legislature to referendum, "as provided by statute."[6] Chapter 7 of Utah's Election Code provides the procedures for Initiatives and Referenda, with the Initiative Statute[7] contained in Part 2 and the Referendum Statute[8] contained in Part 3.

Plaintiffs filed their Complaint[9] against the Lt. Governor in December 2019 after their application to submit to referendum Senate Bill 2001 ("Application"),[10] the Tax Restructuring

---

[3] Motion for Attorneys' Fees and Costs ("Motion"), docket no. 63, filed Jun. 4, 2021.

[4] Defendant's Memorandum in Opposition to Plaintiffs' Motion for Attorney Fees and Costs ("Opposition"), docket no. 68, filed Jul. 2, 2021.

[5] Reply in Support of Motion for Attorneys' Fees and Costs ("Reply"), docket no. 70, filed Jul. 30, 2021.

[6] Utah Const. art. VI, § 1(2)(a)(i).

[7] Utah Code § 20a-7-201 et seq.

[8] Utah Code § 20a-7-301 et seq.

[9] Verified Amended Complaint ("Complaint"), docket no. 5, filed Dec. 24, 2019.

[10] Exhibit 1, Application for an Initiative or Referendum ("Application"), docket no. 5-1, filed Dec. 24, 2019.

Revisions Bill ("S.B. 2001"), was denied by the Lt. Governor.[11] Plaintiffs' Complaint alleged that two provisions in Utah's Referendum Statute[12] were unconstitutional: (1) a requirement that each of the five sponsors of a referendum voted in a general Utah election within the last three years ("Voting Requirement")[13]; and (2) a requirement that petitioners collect signatures from 8% of active voters in at least 15 of Utah's 29 counties ("County Requirement") (together, the "Provisions").[14][15] Utah's Initiative Statute[16] had a similar county requirement that was struck down as unconstitutional by the Utah Supreme Court in *Gallivan v. Walker*.[17] The county requirement in the Initiative Statute was replaced with a Senate District requirement,[18] but the County Requirement in Utah's Referendum Statute was still good law when Plaintiffs filed this action.

The Lt. Governor rejected Plaintiffs' Application because only four out of the required five sponsors satisfied the Voting Requirement.[19] Because Plaintiffs' Application was rejected at this initial approval phase, they could not move on to the signature gathering phase, and the Lt. Governor never applied the County Requirement to Plaintiffs.

---

[11] Complaint ¶¶ 13–14 at 3–4, ¶ 19 at 5.

[12] Utah Code § 20a-7-301 et seq.

[13] Utah Code § 20A-7-302(2)(b)(ii), amended by H.B. 211, 64th Leg., 2021 Gen. Sess. (Utah 2021) ("H.B. 211") at 1707–10. H.B. 211 removed the Referendum Statute's Voting Requirement.

[14] Utah Code § 20A-7-301(1)(a)(ii), amended by H.B. 211, 1682–4 (2021). H.B. 211 changed "counties" to "Senate districts."

[15] Complaint at 6–15.

[16] Utah Code § 20a-7-201 et seq.

[17] *Gallivan v. Walker*, 54 P.3d 1069, 1076 (Utah 2002).

[18] Utah Code Ann. § 20A-7-201(1)(a)(ii).

[19] Complaint, Exhibit 2, docket no. 5-2, filed Dec. 24, 2019.

A little over one month after Plaintiffs filed their Complaint, the Lt. Governor announced the repeal of S.B. 2001.[20] On February 28, 2020, the Lt. Governor filed a motion to dismiss ("Motion to Dismiss") this action, arguing that the repeal of S.B. 2001 mooted Plaintiffs' claims.[21]

The Motion to Dismiss was denied ("Order Denying Dismissal")[22] because the Plaintiffs' injury was the rejection of their Application and the challenged Voting Requirement was still in effect.[23] The Lt. Governor filed a motion to certify as appealable the Order Denying Dismissal,[24] which was granted ("Order Certifying Appeal").[25] In the Order Certifying Appeal, this court certified the appeal because "there [was] a substantial ground for a difference of opinion on the question presented for review."[26] The Lt. Governor filed an interlocutory appeal with the Tenth Circuit ("Tenth Circuit Appeal"),[27] which was granted, and the District Court's proceedings were stayed pending the appeal. Oral argument for the Tenth Circuit Appeal was scheduled for March 10, 2021.

On March 6, 2021, the parties moved to postpone oral argument due to pending legislation that would amend certain provisions in Utah's Referendum Statute, including the Provisions challenged in this case.

---

[20] Exhibit A, Tax Referendum Repeal Clarification, docket no. 23-1, filed Feb. 28, 2020.

[21] Defendant's Motion to Dismiss and Memorandum in Support Thereof ("Motion to Dismiss"), docket no. 23, filed Feb. 28, 2020.

[22] Order Denying Defendant's Motion to Dismiss ("Order Denying Dismissal"), docket no. 34, filed May 12, 2020.

[23] Order Denying Dismissal at 4, 7–8.

[24] Motion to Certify the Court's Order Denying Defendant's Motion to Dismiss as Appealable and for Stay of Proceedings Pending Appeal, docket no. 35, filed May 15, 2020.

[25] Order Granting in Part and Denying in Part Defendant's Motion to Certify the Court's Order Denying Defendant's Motion to Dismiss as Appealable and for Stay of Proceedings Pending Appeal ("Order Certifying Appeal"), docket no. 48, filed Jun. 22, 2020.

[26] Order Certifying Appeal at 1.

[27] Order, docket no. 55, filed Jul. 30, 2020.

During the legislative hearings for House Bill 211, Initiatives and Referenda Amendments ("H.B. 211"),[28] the bill's sponsor stated that the bill was developed with the assistance of the Election Office and County Clerk's Office and addresses "half a dozen or so legal challenges," potential or pending.[29] The bill's sponsor explained that H.B. 211 fixes the County Requirement so "that we're not in violation of the constitution,"[30] and that the Voting Requirement is not constitutional.[31] The Director of Elections from the Lieutenant Governor's Office, addressing the legislators on the floor, said "we think this is a great bill," and "please vote for it."[32] H.B. 211 was signed into law on March 16, 2021. H.B. 211 removed the Voting Requirement and changed the County Requirement to a senate district requirement similar to the Senate District requirement in the Initiative Statute. After H.B. 211 was passed, Plaintiffs and the Lt. Governor filed a Joint Motion to Dismiss for Mootness the Tenth Circuit Appeal, which the Tenth Circuit granted without prejudice to Plaintiffs' claim for attorneys' fees and costs.[33]

## DISCUSSION

Plaintiffs argue they are entitled to their attorneys' fees and costs accrued in bringing this action based on the bad faith exception to the American Rule.[34] They argue that the Lt. Governor engaged in two forms of bad faith: (1) bad faith during the course of litigation; and (2) bad faith in causing an action to be brought.[35]

---

[28] H.B. 211.

[29] Senate Government Operations and Political Subdivisions Committee Hearing at 0:02:21–0:02:37 (February 22, 2021), https://le.utah.gov/av/committeeArchive.jsp?timelineID=180894.

[30] *Id.* at 0:03:38–0:03:44.

[31] *Id.* at 0:04:35–0:04:39.

[32] *Id.* at 0:06:40–0:06:53.

[33] Order, docket no. 61, filed May 19, 2021.

[34] Motion at 3–4. The parties agree that Plaintiffs have no statutory basis for fees. *See* Motion at 3, n. 12; Opposition at 8.

[35] Motion at 4.

The Lt. Governor's relevant arguments[36] are that it was merely defending a lawsuit; that it chose to defend two laws that were debatably open questions of law; and that the "bad faith exception applies only to conduct that occurs in litigation."[37]

"In the United States, parties are ordinarily required to bear their own attorney's fees—the prevailing party is not entitled to collect from the loser."[38] "Under this 'American Rule,' we follow 'a general practice of not awarding fees to a prevailing party absent explicit statutory authority.'"[39] "The rationale underlying this rule, which often operates to prevent full compensation to injured parties, is that because litigation is at best uncertain[,] one should not be penalized for merely defending or prosecuting a lawsuit."[40] "However, [t]he federal judiciary has recognized several exceptions to the general principle that each party should bear the costs of its own legal representation."[41] "One such exception allows the courts the inherent power to assess attorneys' fees when the losing party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons, which exception is commonly referred to as the 'bad-faith' exception to the American Rule."[42]

---

[36] The State argues the Motion should be denied for three reasons: "(1) there is no contractual relationship between the parties; (2) no statute provides for the payment of fees; and (3) the Lt. Governor did not act in bad faith . . ." Opposition at 6. The Plaintiffs do not assert the existence of a contractual relationship and agree that they have no statutory basis for fees, so only the bad faith defense is addressed.

[37] Opposition at 2–3.

[38] *Buckhannon Bd. & Care Home, Inc. v. W. Virginia Dep't of Health & Hum. Res.*, 532 U.S. 598, 602 (2001) (internal citation omitted).

[39] *Id.* (citing *Key Tronic Corp. v. United States,* 511 U.S. 809, 819 (1994)).

[40] *Towerridge, Inc. v. T.A.O., Inc.*, 111 F.3d 758, 765 (10th Cir. 1997) (citing *Fleischmann Distilling Corp. v. Maier Brewing Co.*, 386 U.S. 714, 718 (1967)) (internal quotation marks omitted).

[41] *Id.* (internal quotation marks omitted).

[42] *Id.* (internal quotation marks and citations omitted).

"Fees awarded under the bad-faith exception are punitive in nature, but are designed to punish the abuse of judicial process rather than the original wrong [underlying the action]."[43] "The standard for bad faith awards is stringent, for otherwise those with colorable, albeit novel, legal claims would be deterred from testing those claims in a federal court."[44] "In order to fall within the exceedingly narrow bad faith exception to the general rule, there must be clear evidence that the challenged claim is entirely without color *and* has been asserted wantonly, for purposes of harassment or delay, or for other improper reasons."[45] Such an award is "within the discretion of the trial judge," and "courts generally require a finding by the trial judge of subjective bad faith."[46]

The Tenth Circuit will not approve an award of attorney's fees under the bad-faith exception "where the wrongful conduct consists *solely* of prelitigation bad faith acts."[47]

There are two forms of bad faith conduct that may warrant a fee award: (1) bad faith during the course of the litigation; or (2) bad faith in causing an action to be brought or defending an action through the assertion of a colorless defense.[48]

---

[43] *Id.* at 765–66.

[44] *Sterling Energy, Ltd. v. Friendly Nat. Bank*, 744 F.2d 1433, 1435 (10th Cir. 1984) (internal quotation marks and citation omitted).

[45] *F.T.C. v. Kuykendall*, 466 F.3d 1149, 1152 (10th Cir. 2006) (internal quotation marks and citation omitted).

[46] *Sterling Energy,* 744 F.2d at 1435 (citation omitted).

[47] *Towerridge,* 111 F.3d at 769 (emphasis added); *see also Morganroth & Morganroth v. DeLorean*, 213 F.3d 1301, 1317–18 (10th Cir. 2000), *overruled on other grounds by TW Telecom Holdings Inc. v. Carolina Internet Ltd.*, 661 F.3d 495 (10th Cir. 2011).

[48] *Id.* at 768. Plaintiffs drop their argument about bad faith during the course of litigation in their reply and instead assert two bases for a fee award, namely "(1) the State's assertion of a colorless defense and (2) the fact that the State forced Plaintiffs to bring this case." Reply at 2. Both these bases fit within the one bad faith exception of "causing an action to be brought." *See Id.* ("[t]he second category is bad faith in bringing an action . . . or defen[se of] an action through the assertion of a colorless defense . . . this second form of bad faith . . .").

### Plaintiffs fail to allege any actions by the Lt. Governor that constitute bad faith during the course of litigation.

Bad faith during the course of litigation refers to actions that abuse the judicial process,[49] such as actions that delay or disrupt litigation and actions that impede court orders.[50] For example, in *Chambers v NASCO*,[51] the U.S. Supreme Court affirmed an award of attorney's fees to the plaintiff in a specific performance action against the defendant because the defendant had engaged in numerous acts in bad faith, including: (1) transferring property at issue to a trust, recording the deeds, and preparing a leaseback agreement so defendant's company could remain in possession of the properties;[52] (2) refusing to allow the plaintiff to inspect defendant's company's corporate records;[53] and (3) filing "a series of meritless motions and pleadings."[54]

Plaintiffs have failed to assert any such actions taken by the Lt. Governor during the course of litigation. Instead, Plaintiffs assert that "the State forced Plaintiffs to litigate for 16 months before conceding the [P]rovisions' unconstitutionality and repealing them,"[55] which included forcing the Plaintiffs to

> file a complaint, a motion for judgment on the pleadings, an opposition to her own motion for judgment on the pleadings, an opposition to her motion to dismiss for mootness, an opposition to her motion to certify that question for interlocutory appeal, an opposition to her interlocutory petition in the Tenth Circuit, and an opposition to her Tenth Circuit merits brief, all before alerting Plaintiffs that she had 'brought up' this issue to the legislature, that the legislature agreed the provisions were unconstitutional, and that they would be repealed.[56]

---

[49] *Id.*

[50] *Chambers v. NASCO, Inc.*, 501 U.S. 32, 46 (1991).

[51] *Id.*

[52] *Id.* at 36–37.

[53] *Id.* at 38.

[54] *Id.*

[55] Motion at 1.

[56] Reply at 4.

Plaintiffs fail to explain how these filings abused the judicial process, delayed the litigation, or impeded court orders. Instead, Plaintiffs point to the legislative history of H.B. 211 and the statements of H.B. 211's sponsor as evidence that the Lt. Governor knew the Provisions were unconstitutional and were therefore enforcing them in bad faith. Plaintiffs also point to the endorsement of H.B. 211 by the Director of Elections. Plaintiffs' assertions are appropriately aimed at supporting their argument that the Lt. Governor engaged in bad faith under the second bad faith exception, namely by asserting a colorless defense or causing an action to be brought, rather than on the basis of bad faith during the course of litigation.[57]

### Plaintiffs fail to show that the Lt. Governor asserted colorless defenses or otherwise acted in bad faith in this action.

Plaintiffs argue that the legislative history of H.B. 211 shows that the Lt. Governor knew the Provisions were unconstitutional and worked to repeal them "while simultaneously litigating the provisions as if no repeal were contemplated."[58]

First, Plaintiffs' mischaracterization of this case must be addressed. Plaintiffs assert that the Lt. Governor enforced the County Requirement against Plaintiffs.[59] This is false. The Lt. Governor never enforced the County Requirement against Plaintiffs because Plaintiffs' Application was denied based on the Voting Requirement.

Plaintiffs argue in their Motion[60] that the Lt. Governor conceded the unconstitutionality of the County Requirement in the Lt. Governor's Opposition to Plaintiffs' Motion for Judgment

---

[57] Plaintiffs may also be arguing that the legislature's intentions and actions are a sort of duplicity of the State, because of the actions of the Lt. Governor in defending the case. But the legislative and executive branches of the State are not identical and their actions and intentions cannot be attributed to each other.

[58] Motion at 1, 2–8; Reply at 3–4.

[59] "And over the ensuing decades, [the State] continued enforcing [the County Requirement], including against the Plaintiffs in this case." Motion at 2.

[60] Motion at 7.

on the Pleadings ("Opposition to MJP"),[61] but fail to mention the Lt. Governor's other arguments in its Opposition to MJP. The Lt. Governor also asserted that the Plaintiffs' County Requirement claims should not be addressed because the Lt. Governor rejected the Plaintiffs' Application based on the Voting Requirement and never applied the County Requirement against Plaintiffs.[62] And, the Lt. Governor further argued that Plaintiffs' other constitutional challenges to the County Requirement, including a First Amendment challenge, were open questions of law, and should be certified to the Utah Supreme Court.[63] After considering the complete facts, it is clear that Plaintiffs have not provided sufficient argument or evidence that the Lt. Governor was asserting colorless defenses in this action.

Second, to the extent that Plaintiffs are asserting the catalyst theory as support for their arguments,[64] such an argument weighs against Plaintiffs. The catalyst theory allows a plaintiff to be considered a "prevailing party" if, instead of winning on the merits of the case, a plaintiff "achieves the desired result because the lawsuit brought about a voluntary change in the defendant's conduct."[65] In *Buckhannon Bd. & Care Home, Inc. v. W. Virginia Dep't of Health & Hum. Res.,* the U.S. Supreme Court affirmed the Fourth Circuit Court of Appeals' denial of a catalyst claim for attorney's fees under certain federal statutes.[66] Under the federal statutes at issue in *Buckhannon*, an award of attorney's fees was available to the "prevailing party."[67] The

---

[61] Defendant's Memorandum in Opposition to Plaintiffs' Motion for Judgment on the Pleadings ("Opposition to MJP") at 32, docket no. 51, filed Jun. 26, 2020.

[62] Opposition to MJP at 24–25.

[63] Opposition to MJP at 32–33.

[64] "[B]ecause it took filing this case for the State to repeal these unconstitutional provisions . . . the Court should award Plaintiffs' attorney fees and costs incurred in reaching that result." Motion at 1. "Plaintiffs should be awarded the costs and fees they expended *to finally motivate this fix*." Motion at 8, emphasis added.

[65] *Buckhannon*, 532 U.S. at 601.

[66] *Id.*

[67] *Id.*

U.S. Supreme Court held in *Buckhannon* that the "catalyst theory is not a permissible basis for the award of attorney's fees" under the federal statutes at issue in that case.[68] The Utah District Court has extended the holding in *Buckhannon* to fee awards under § 1988.[69] Although Plaintiffs seek attorney's fees under the bad faith exception instead of under a federal statute, the Supreme Court's discussion in *Buckhannon* of avoiding a "second major litigation" applies here.

The Supreme Court stated that "a catalyst theory hearing would require analysis of the defendant's subjective motivations in changing its conduct, an analysis that will likely depend on a highly factbound inquiry and may turn on reasonable inferences from the nature and timing of the defendant's change in conduct."[70] Plaintiffs' argument that the legislative history of H.B. 211 is evidence of the Lt. Governor's bad faith would require, at a minimum: (1) an analysis into the subjective motivations of the legislature for passing H.B. 211; (2) an analysis into whether the statements of the bill's sponsor should be attributed to the Lt. Governor; and (3) an analysis into whether the Election Office Director's statements of support of H.B. 211 should be interpreted as evidence of the Lt. Governor's alleged knowledge that the Provisions were unconstitutional. Plaintiffs' argument is tenuous at best, even without addressing Plaintiffs' incomplete statement of the facts discussed above and the weight against Plaintiffs' arguments if based on the catalyst theory.

Finally, Plaintiffs argue that the Lt. Governor's assertion of a colorless defense, "particularly in areas, like this, involving 'constitutional and civil-rights' claims, is a basis on which the Court can and should award Plaintiffs the costs and fees they incurred litigating this

---

[68] *Id.* at 610.

[69] *RHN Corp. v. Box Elder Cty.*, 416 F. Supp. 2d 1254, 1261 (D. Utah 2006).

[70] *Buckhannon*, 532 U.S. at 609 (internal quotation marks and citation omitted).

case."[71] In support of Plaintiffs' assertion, they cite to a treatise;[72] to the Eighth Circuit's *Doe v Poelker*[73] decision; and to *Towerridge, Inc. v. T.A.O., Inc.*[74] Ignoring the treatise as a non-binding, secondary source, discussion moves on to the two cases cited by Plaintiffs which do not support their arguments.

In *Poelker*, the Eighth Circuit found that the government defendants violated plaintiff's equal protection rights when defendants refused to comply with the U.S. Supreme Court's rulings on abortion. The Eighth Circuit awarded the plaintiff attorneys' fees under the bad faith exception.[75] However, the U.S. Supreme Court reversed the Eighth Circuit, ruling that there was no equal protection violation.[76] In a footnote, the Supreme Court notes that the fees award was erroneous as well.[77]

In *Towerridge,* a subcontractor sued a contractor for nonpayment of completed work on a federal contract. The Tenth Circuit reversed an award of attorneys' fees based on a finding of bad faith by the trial court because the bad faith finding was "premised solely on events preceding the lawsuit."[78] The Tenth Circuit also discussed the second basis of bad faith, the defense of an action through the assertion of a colorless defense, which we must assume, based on their pincite, is the reason Plaintiffs cited to the case. *Towerridge* does not support Plaintiffs' argument, but instead supports the Lt. Governor's argument about prelitigation conduct. The Lt.

---

[71] Motion at 6.

[72] § 2675 Particular Items of Cost—Attorney's Fees: Availability, 10 Fed. Prac. & Proc. Civ. § 2675 (4th ed.).

[73] *Doe v. Poelker*, 515 F.2d 541 (8th Cir. 1975), *rev'd,* 432 U.S. 519 (1977) ("*Poelker I*").

[74] Motion at 6, n.23.

[75] *Poelker I.*

[76] *Poelker v. Doe*, 432 U.S. 519, 521 (1977).

[77] *Id.* at 521 n.2.

[78] *Towerridge,* 111 F.3d at 765.

Governor asserts that prelitigation conduct should not be considered when deciding whether it acted in bad faith. While the Tenth Circuit has not stated that prelitigation conduct may never be considered when assessing claims of bad faith, it has established that prelitigation conduct may not be the sole basis for a fees award.[79] In this case, Plaintiffs are attempting to punish the Lt. Governor for the "original wrong"[80] of denying their Application, but they can point to no conduct by the Lt. Governor during the proceedings of this action which was anything other than a good faith defense of the lawsuit. This court recognized "there [was] a substantial ground for a difference of opinion on the question presented for review,"[81] and the Tenth Circuit granted the interlocutory appeal, evidencing the non-frivolous nature of the Lt. Governor's defenses. Therefore, because an award based on the bad faith exception may not be "premised solely on prelitigation conduct,"[82] and because Plaintiffs fail to show the Lt. Governor engaged in bad faith during the course of the litigation or in its defense of this action, Plaintiffs fail to establish any bad faith by the Lt. Governor and their Motion must fail.

## CONCLUSION

"An award of attorneys' fees for bad faith . . . can be imposed only in exceptional cases and for dominating reasons of justice."[83] This is not one of those cases. Because Plaintiffs have failed to show that the Lt. Governor acted in bad faith during the course of the litigation or in defending this action, Plaintiffs have failed to satisfy the bad faith exception to the American Rule, and their Motion must be denied.

---

[79] See *Id.*; see also *Morganroth,* 213 F.3d at 1317–18.

[80] *Towerridge,* 111 F.3d at 766.

[81] Order Certifying Appeal at 1; *see supra* p. 4.

[82] *Towerridge,* 111 F.3d at 765.

[83] *Ass'n of Flight Attendants, AFL-CIO v. Horizon Air Indus., Inc.*, 976 F.2d 541, 550–51 (9th Cir. 1992) (internal citations omitted); see also *Sterling Energy,* 744 F.2d at 1437.

**ORDER**

IT IS HEREBY ORDERED that for the foregoing reasons, Plaintiffs' Motion for Attorneys' Fees and Costs[84] is DENIED.

IT IS FURTHER ORDERED that, based on DUCivR 7-1(f) and the sufficiency of the parties' memoranda for a decision without a hearing, the Lt. Governor's request for oral argument is also DENIED.

Signed August 18, 2021.

BY THE COURT

David Nuffer
United States District Judge

---

[84] Docket no. 63, filed Jun. 4, 2021.